IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

<u>Phyllis H. Witcher</u>            )
Plaintiff,                          )
                                    )
                                    )   CIVIL ACTION NO. __07-213__
                                    )
V.                                  )
                                    )   JURY TRIAL DEMANDED
                                    )
                                    )
<u>Murray H. Witcher, Jr</u>.         )
Defendant                           )

COMPLAINT

This action is brought to the District Court because subject-matter jurisdiction resides with with Court as Defendant Murray H. Witcher, who as a Federal (military) employee willfully and fraudulently induced Plaintiff to sign a Federal document, to her significant later financial detriment to her Pension security.

PARTIES

1. Plaintiff <u>Phyllis H. Witcher</u> is an adult resident citizen of New Castle County, Delaware, residing at 2304 Riddle Ave. C2, Wilmington, DE 19806. Her phone is 302.655.7764.

2. Defendant <u>Murray H. Witcher, Jr.</u> is an adult resident citizen of New Castle County, Delaware who may be served with service of process by this Court at the following address:
214 Steeplechase Circle
Wilmington, DE 19808

RELEVANT FACTS

3. Murray and Phyllis Witcher were married on April 8, 1961. Mr. Witcher is a U.S. Naval Academy graduate, in 1960. He served on active duty until 1967 and then began a civilian career, but chose to remain in the Navy Reserves for the full number of years to qualify for retired pay (pension) after he turned 60 years of age.

4. The military permits its members to also sign-up for the Survivor Benefit Plan (SBP), that will continue the monthly pension payments for the survivor spouse (most often a wife) and Mrs. Witcher had been made aware of this benefit but it was not discussed in greater detail until he was eligible to sign up for the SBP, around 1983. Indeed, she believes she recalls having to sign a SBP paper also for his civilian employer, the DuPont Company.

5. On or about June, 1983/1984, as required by Federal law, Mr. Witcher raised the SBP issue

- 1 -

with Mrs. Witcher as it was time for his election on his SBP and he had the Federal form (# 2656, on information and belief) to sign up for it, to commit to his choice for the assignment amount in dollars for her should he precede her in death and under Federal law, the Form required her signature.

      6. He explained that there were 2 levels of the military SBP payment to the surviving spouse and his retirement income from both this military and civilian sources would be modest, and as he had ample life insurance for her, through both the DuPont Company and the U.S. Navy, he recommended that "we" elect the lower amount for the SBP so that we would have greater monthly pension income to enjoy while we were both alive, as retirees. Feeling financially secure with his explanation, and emotionally secure having never heard Defendant ever mention divorce, Plaintiff Mrs. Witcher agreed and signed the Form 2656. And Plaintiff was yet 6-7 years away from learning what Mr. Witcher had fraudulently attempted with her equity interest in their home, in 1979. In the 1992 divorce, Mrs. Witcher was not granted any of his life insurance be assigned to her.

      7. When they moved from Chicago to Pennsylvania in Sept. 1979, Mrs. Witcher had to postpone her arrival in Pennsylvania due to final details on their Chicago home, so she could not come with Plaintiff and their children. She signed her half of the $50,000 equity check so he could purchase the Pennsylvania house they had selected, being assured that her interests were being protected, as she had been present at all closings of their 4 previous homes. She arrived in Pennsylvania in late October 1979. She began receiving many calls from the Title insurance people telling her that her husband had "to finish the closing." He eventually agreed and went to their office and did so. Plaintiff had no reason to question this.

      8. Defendant Murray Witcher initiated divorce in 1986. Around 1989, in a phone conversation with a lawyer-friend of hers, Plaintiff mentioned that her signature was not on the deed for their home in Pennsylvania. The lawyer said there must be a second deed, though she did not understand what he was saying. Plaintiff then went to the office of the Recorder of Deeds in Media, PA and indeed, there was a previous deed, also signed only by Mr. Witcher. On the one deed she had ever seen, the one she was discussing in 1989, Mrs. Witcher is listed as the Grantee, but again, she did not know how their history on this house purchase brought her to be listed as Grantee. Only later would she learn that in 1979, there was no Divorce Code yet in Pennsylvania that would divide assets equitably, and if there was a divorce, whichever partner had title to an asset of the marriage, that spouse alone got that asset. Defendant Mr. Witcher had attempted to take the $50,000 equity check endorsed to them both, and convert it to a real estate asset that would be titled to him alone and therefore awarded to him only, in a divorce. Copies of these two deeds on the Pennsylvania home can be supplied upon request of the Court.

      9. But even with this attempted fraud now discovered, Plaintiff did not ever think about the SBP election as when she was asked to sign, agreeing to the significantly reduced amount she would receive monthly after his death, he had never uttered the word "divorce" to her in all the 25 years of their marriage, neither in anger or jest. Only in 2005, when her brother told her Defendant had asked him, in 1979, about a possible plan for divorce, did she first learn of Mr. Witcher's early intentions on this issue, when she was persuaded in 1983 to sign the Form for the SBP's lower monthly amount. Here in 2007, Plaintiff, on information and belief from phone talks with DFAS (Defense Finance and Accounting Services, based in Cleveland,OH) her monthly pension payments will drop approximately from $1000/month to $300/monthly, or less. DFAS is permitted to discuss specifics only with the military

member, not the spouse. Indeed, she is told the exact amount is printed on Defendant Mr. Witcher's monthly retired payment. Exhibit 1, attached, is Dr. Herrmann's Affidavit on what Mr. Witcher told him in 1979.

10. In Oct. 2005 to Oct. 2006, Congress authorized an Open Enrollment Period for the SBP, meaning that for this one year; any military member could change what he had elected originally for the SBP. Plaintiff met with Mr. Witcher in 2005, urged him to make this change during this one-year Open Enrollment period. She told him, for the first time, that she now knew that he had been planning divorce when he fraudulently induced her to sign on for the lower SBP in 1983. He did not deny that he had mentioned his divorce intentions to Douglas Herrmann in 1979. She also told him that in the alternative, he could take out a $50,000 life insurance policy on himself, with Plaintiff as beneficiary, to give her money for her support after his death, rather than place this burden upon their two children. He refused both options. Exhibit 2 is the 2005 Open Enrollment version of Form 2656. See Section VIII on "pg. 21".

11. In the divorce, there had been no settlement agreement, and the court awarded Mrs. Witcher 48% of Mr. Witcher's Navy pension ("retired pay") but not the SBP. In 1995, Defendant Mr. Witcher elected the SBP go to his Former Spouse, Mrs. Witcher, not his second wife, who had significant assets from her divorce from her physician-husband. The Dept. of Defense does not permit a military member to elect more than one SBP. As Plaintiff had no alimony awarded, without the SBP she would be destitute with a small Social Security monthly check only, and their two adult children would have dreadful pressure for providing her support with young families of their own. Her two children are fully aware of this current situation.

12. In 2005, subsequent to learning from her brother Dr. Herrmann of Defendant's statement of intent in 1979 concerning divorce, Mrs. Witcher was discussing this situation with a Judge Advocate General attorney at McGuire Air Force Base in New Jersey and he told her he hoped she would send a copy of this Complaint to the Secretary of Defense. His comment suggests to Plaintiff that the Department of Defense must be seeing large numbers of military Former Spouses being left impoverished by similar devious acts of military members in garnering the spouse's required signature on the SBP election form.

## COUNT I

### FRAUDULENT INDUCEMENT

13. Plaintiff Phyllis H. Witcher adopts, realleges and incorporates her allegations set forth in Paragraphs 1-12 of this Complaint.

14. The above and foregoing actions of Defendant Murray H. Witcher give rise to a cause of action for Fraudulent Inducement as Murray H. Witcher, Jr., with a view of misleading Plaintiff Phyllis H. Witcher into a course of action, made an affirmative representation on the reason she should agree, with her signature, to his choosing the lower amount on a military SBP election contract which he knew to be false, as his intentions to divorce were unknown to her, and the benefit to her of sharing greater pension pay with him after his retirement was not his actual intent, as he expected to divorce her before his retirement.

He induced Plaintiff to sign onto the lower amount for the SBP, and even if it became an issue in divorce, it could not later be increased even if requested by him or ordered by a court. All of the foregoing has specifically caused Mrs. Witcher damage, based on her life expectancy of 85 years (she is age 69 today), including but not limited to, $126,000 monetary damage over the remaining years of the pension awarded her.

Plaintiff Phyllis H. Witcher prays for the following relief: Compensatory damages of $126,000 and an award of punitive and/or exemplary damages to be set at the trial of this cause but believed to be in an amount not less than $50,000.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated, this the 20th day of April, 2007,

RESPECTFULLY SUBMITTED,

By: *Phyllis H. Witcher*
Pro se
2304 Riddle Ave. C2
Wilmington, DE 19806
(302) 655-7764

- 4 -

## AFFIDAVIT
## STATE: INDIANA, U.S.A.

## COUNTY: VIGO

BE IT ACKNOWLEDGED that <u>Douglas J. Herrmann, resident of Terre Haute, Vigo County, Indiana,</u> the undersigned deponent, being of legal age, does hereby depose and say under oath as follows:

In May of 2005, I retired as a professor and chairperson of the Psychology Department at Indiana State University in Terre Haute, Indiana. For the social events surrounding my retirement, I brought my sister, Phyllis H. Witcher, who lives in Wilmington, Delaware, out to Indiana for the week surrounding my retirement events. On the afternoon of Thursday, April 21, 2005, Phyllis and I were sitting in the Family Room of my home, talking about her divorce, which began in 1986.

On that occasion, I mentioned that her husband (Murray H. Witcher, Jr.) mentioned something about divorce when I and my wife Donna had visited Phyllis and Murray in their home in Barrington Illinois in June of 1979. Specifically I told her that one evening during that visit Murray had asked me if I would still be friends with him should he and my sister got a divorce. Neither Phyllis nor Donna heard Murray when he asked me this because Phyllis had gone to bed and my wife Donna was on her way to bed. This was the first and only time I had heard him mention a possible divorce between him and Phyllis until 1986. Phyllis never mentioned to me at that time or at other times that she and Murray were having problems that would result in a divorce.

When I told Phyllis about Murray's question in 1977, her response to what I told her was one of astonishment. She said that I had never told her that Murray had said that previously. At first I told her that I had, but on reflection I now realize that I must not have told her of his statement because I was fearful that if I did tell her of his comment, that it might might precipitate a divorce at that time, that is in 1979. In Sept. 1979, Phyllis moved from the Chicago area to a new home in Chadds Ford, PA.

In 1990 I became aware of Murray's documented attempt in the fall of 1979, to cheat Phyllis of the earned equity she had in their home(s) by having the house in Chadds Ford titled in his name alone without Phyllis's knowledge. In 2005 she was flabbergasted by what I had just told her in 2005 about what Murray had said in 1979. She pointed out to me that had she known, she never would have signed the Chicago home

equity check and never would have permitted him to take care of the closing on that house on his own. Phyllis has told me and others that Murray never once mentioned divorce to her until the day he said he was divorcing her in Sept. 1986.

I affirm that the foregoing is true except as to statements made upon information and belief, and as to those I believe them to be true. Witness my hand under the penalties of perjury this tenth day of April, 2007. On April 10, 2007, before me Douglas J. Herrmann, personally appeared, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in his recognized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ Angie Marina - NOTARY

Deponent Signature ___Douglas Herrmann___

Date: __4-10-2007__

Deponent Address: 3502 Poplar Street, Terre Haute, IN 47803

**SURVIVOR BENEFIT PLAN (SBP)
AND RESERVE COMPONENT SURVIVOR BENEFIT PLAN (RCSBP)
OPEN ENROLLMENT ELECTION**
*(Public Law 108-375) (October 1, 2005 - September 30, 2006)*

## PRIVACY ACT STATEMENT

**AUTHORITY:** 10 U.S. Code 1401; 10 U.S. Code 2771; 10 U.S. Code 1477; PL 92-425 (September 21, 1972, as amended) and EO 9397.

**PRINCIPAL PURPOSE(S):** To permit eligible individual to make Survivor Benefit Plan, Reserve Component Survivor Benefit Plan elections during the open enrollment period (October 1, 2005 - September 30, 2006).

**ROUTINE USE(S):** None.

**DISCLOSURE:** Voluntary; however, failure to furnish requested information will result in delays in adjusting pay and amounts not being properly computed.

## INSTRUCTIONS

**GENERAL.**

1. Read these instructions carefully before completing the form. Please print legibly.

2. Ensure that you advise your finance center (see Item 3 below for address) of your marital status, correspondence and check address changes, at all times. Reserve component members must notify their personnel center (see Item 4 below for address) of their marital status and correspondence address at all times.

3. For retirees who are entitled to receive retired pay, regardless of VA, Civil Service offset/waiver, mail your election (certified or registered mail with return receipt requested is strongly recommended) to the appropriate Uniformed Service designated agent. The Uniformed Services' designated agents are:

(a) **ARMY, NAVY, AIR FORCE AND MARINE CORPS:** Director, DFAS-US Military Retired Pay, PO Box 7130, London, KY 40742-7130;

(b) **COAST GUARD:** Commanding Officer (RAS), USCG Personnel Service Center, 444 S.E. Quincy Street, Topeka, KS 66683-3591;

(c) **PUBLIC HEALTH SERVICE:** Office of Commissioned Corps Support Services, Compensation Branch, 5600 Fishers Lane, Room 4-50, Rockville, MD 20857;

(d) **NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION:** Same as U.S. Coast Guard.

4. For Reserve Members who have not received retired pay, mail your election (certified or registered mail with return receipt requested is strongly recommended) to the appropriate Branch of Service as follows:

(a) **ARMY:** Commander, Human Resources Command - St. Louis, ATTN: AHRC-PAP-T, 1 Reserve Way, St. Louis, MO 63132-5200;

(b) **NAVY:** U.S. Naval Reserve Personnel Center (Code N32), 4400 Dauphine Street, New Orleans, LA 70149-7804;

(c) **AIR FORCE:** Headquarters, ARPC/DPSSE, 6760 E. Irvington Place, Denver, CO 80280-4020;

(d) **MARINE CORPS:** Headquarters, U.S. Marine Corps, Manpower and Reserve Affairs (MMSR-5), 3280 Russell Road, Quantico, VA 22134-5103;

(e) **COAST GUARD:** Commanding Officer (RAS), USCG Personnel Service Center, 444 S.E. Quincy Street, Topeka, KS 66683-3591.

**SECTION I - MEMBER INFORMATION.**

ITEMS 1 and 2. Self-explanatory.

ITEM 3. If you are retired from active duty, enter the date of retirement or the date of transfer to the Fleet Reserve. If you are a Reserve member whose eligibility for retired pay arises under Chapter 1223 of title 10, United States Code, enter either the date of your 60th birthday, or the later date on which you applied to receive retired pay.

ITEMS 4 and 5. Self-explanatory.

ITEM 6. Enter the address and telephone number (including area code) where you can be contacted.

**SECTION II - BENEFICIARY INFORMATION.**

This information is needed to determine SBP/RCSBP premiums and annuities at the time of death.

ITEM 7.a. Provide your spouse's name and requested information. Also, attach a copy of your marriage certificate. If you have no spouse, enter "N/A".

7.b. through 10. Provide the requested information about your spouse. In Item 10, if marriage occurred outside the United States, include city, province, and name of country.

ITEM 11. If you do not have dependent children, enter "N/A" in this item. If you elect coverage for your dependent children, provide the requested information and attach copy of birth certificate(s).

11.e. An incapacitated child is an unmarried child who has become incapable of self support before the age of 18, or after the age of 18 but before age 22 while a full time student. Documentation is required.

**DD FORM 2656-9 INSTRUCTIONS, AUG 2005**

SECTION III - ELECTION OF COVERAGE.

NOTE: Election becomes effective on the first day of the month after the month it is received by your finance center or the Reserve Personnel Center for Reserve Members awaiting retired pay. You must live for 24 months from the effective date in order for the beneficiary to receive an annuity. If you die before the end of the 24 month period, all Open Enrollment premiums that you paid will be refunded to the beneficiary you elected.

ITEM 12. Complete if you fall into one of the following categories:
1. Retired from active duty and either:
   a. declined SBP; or
   b. elected spouse or former spouse coverage at less than the maximum level or child-only coverage.
2. Are a Reservist whose eligibility for retired pay arises under Chapter 1223 of title 10, United States Code, who:
   a. elected RCSBP for a spouse or former spouse at less than maximum coverage or child-only coverage;
   b. when notified prior to January 1, 2001 of eligibility to receive retired pay at age 60, either declined SBP or made no RCSBP election; or
   c. when notified on or after January 1, 2001 of eligibility to receive retired pay at age 60, declined SBP or RCSBP.

12.a. through 12.f.
Persons not participating in SBP or RCSBP: If you are not participating in SBP or RCSBP, you may elect any category of coverage that you could have elected when you were first eligible to participate in SBP or RCSBP. However, if you were previously a participant and elected to discontinue coverage under section 1448a of title 10, United States Code, you are not eligible to participate in this open enrollment.
Persons currently participating in SBP or RCSBP with less than maximum spouse or former spouse coverage, or child-only coverage: If you have SBP or RCSBP coverage for a spouse or former spouse at less than the maximum base amount, you may increase that coverage up to your maximum base amount. You may also add coverage for a dependent child. In addition, if you have child-only coverage, you may add coverage for a spouse or former spouse or elect to increase your child-only coverage up to your maximum base amount. No other elections are available to you under this open enrollment period.

12.d. Initial if you are not married, or unmarried with one dependent child at retirement and have never married since, and desire coverage for a person with an insurable interest in you, and provide the requested information about that person in Item 14. An election of this type must be based on your full gross retired/retainer pay. If the person is not a relative, is a cousin or is more distantly related, attach evidence that the person has a financial interest in the continuance of your life. Under provisions of Public Law 103-337, you are permitted to withdraw from insurable interest coverage at any time. Such a withdrawal is effective on the first day of the month following the month the request is received by your finance center. There is no refund of SBP premiums collected before the effective date of the withdrawal.

12.e. and 12.f. Initial Item 12.e. if you desire coverage for a former spouse. Initial Item 12.f. if you desire coverage for a former spouse and dependent child(ren) of that marriage, and provide the requested information about these children in Item 11 as appropriate. Provide a certified photocopy of final decree of divorce that includes separation agreement or property settlement which discusses SBP for former spouse coverage. The DD Form 2656-1, "Survivor Benefit Plan (SBP) Election Statement for Former Spouse Coverage," or Coast Guard Form CG PSC-4700, "Coast Guard & NOAA Retired Pay Account Worksheet and Survivor Benefit Plan Election," must be completed and accompany this form.

ITEM 13. You cannot decrease the level of coverage. If you have coverage based on full retired pay and add a category of beneficiary not previously covered (i.e., if you are adding your spouse to existing child-only coverage based on full retired pay), you may not select a reduced amount.

13.a. Initial if you desire coverage based on your full gross retired/retainer pay.

13.b. Initial if you desire coverage based on a reduced portion of your retired/retainer pay. This reduced amount may not be less than $300.00. If your full gross retired/retainer pay is less than $300.00, the full gross pay is automatically used as the base amount. Enter the desired amount in the space provided to the right of this item.

13.c. Initial if you are a current participant and desire to increase your base amount. Enter the desired amount in the space provided to the right of this item.

ITEM 14. Enter the information for insurable interest beneficiary and provide a copy of the birth certificate(s). (See Item 12.d. above.)

SECTION IV - REMARKS.

ITEM 15. Reference each entry by item number.

SECTION V - MARITAL STATUS HISTORY.

ITEM 16. Attach a copy of any divorce decree or court order.

SECTION VI - ENROLLMENT PREMIUM PAYMENT INFORMATION.

Payments under this section are in addition to your normal monthly premiums. Refer to the Premium Tables to determine the total enrollment premium amount owed. Choose one of the three payment options provided.
NOTE: Make your check payable to DFAS-Cleveland Center, U.S. Coast Guard, or DHHS as appropriate. Write your Social Security Number and "SBP OPEN ENROLLMENT" on your check. Once your finance center receives your election, you will be notified of any amount owed. If you should desire to void your election, you must notify your finance center in writing within 30 days of being notified of the amount owed.

SECTION VII - MEMBER OF A RESERVE COMPONENT.

Members whose eligibility for retired pay arises under Chapter 1223 of title 10, United States Code, who did not elect Reserve Component Survivor Benefit Plan (RCSBP) after qualifying years of service, or elected RCSBP Deferred must complete this section. If you previously made a RCSBP election, attach a copy of your RCSBP election.
NOTE: If you desire to void your election, you must notify your reserve personnel center in writing within 30 days.

ITEM 18.a. Initial this block if you have elected Option B and would like to change to Option C. See Items 18.b. and 18.c. for more detail.

18.b. Initial this block if your last election was Option A. Option A defers a survivor annuity election or declines RCSBP coverage until age 60. By initialing Option B, you elect to provide a deferred survivor annuity to your beneficiary(ies) that begins on the 60th anniversary of your birth, or the day after your death, whichever is later.

18.c. Initial this block if your last election was Option A and you would like to change it to Option C. By initialing Option C, you elect to provide an immediate survivor annuity beginning on the day after your death, whether before or after age 60.

SECTION VIII - SPOUSE CONCURRENCE FOR RESERVE COMPONENT SURVIVOR BENEFIT PLAN ELECTION ONLY.

If you have no existing RCSBP coverage, Section 1448 of title 10, United States Code requires that an otherwise eligible spouse must concur if a member elects less than maximum coverage or elects child-only coverage. The spouse's concurrence must be obtained and dated on or after the date of the member's election. If concurrence is not obtained when required, maximum coverage will be established for your spouse and child(ren) if appropriate. The spouse and the witness must complete Items 19 and 20. The witness cannot be named as the beneficiary in Sections II and III, and cannot be the retiree.

SECTION IX - CERTIFICATION.

Read the statement carefully, then sign your name and indicate the date of signature. For your SBP/RCSBP election to be valid, you must sign and date the form.

DD FORM 2656-9 INSTRUCTIONS (BACK), AUG 2005