IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHYLLIS H. WITCHER, | : |
| Plaintiff, | : |
| v. | : C. A. No. 07-213-MPT |
| MURRAY H. WITCHER, JR., | : |
| Defendant. | : |

## MEMORANDUM ORDER

On April 20, 2007, *pro se* plaintiff Phyllis H. Witcher ("plaintiff") initiated the instant action against Murray H. Witcher, Jr. ("defendant") alleging that defendant fraudulently induced her to sign a Survivor Benefit Plan ("SBP").[1]

Currently before the court is defendant's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), based on the assertion that this court lacks jurisdiction over the subject matter of the complaint.[2]

**Relevant Facts**[3]

Plaintiff and defendant were married on April 8, 1961. Defendant served on

---

[1] D.I. 2 (Complaint).
[2] D.I. 9 (Defendant's Motion to Dismiss the Complaint).
[3] The facts recited are taken from plaintiff's complaint and are accepted as true for the purposes of defendant's Rule 12(b)(1) motion. *See Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (When a defendant facially attacks the complaint "the court must consider the allegations of the complaint as true."). For the purposes of his motion to dismiss pursuant to Rule 12(b)(1) defendant is not disputing the facts set forth in plaintiff's complaint. *See* D.I. 10 at 3 n.2 (Defendant's Opening Brief in Support of His Motion to Dismiss the Complaint) ("For the purposes of this Motion only, the facts, as set forth in the Complaint are cited. Defendant reserves all rights to contest these averments in any further proceedings.").

1

active duty in the United States Navy from 1960 until 1967 and, thereafter, began a civilian career while also serving in the Navy Reserves for the time period required to qualify for his Navy pension.[4] The military permits its members to sign up for a SBP that will continue monthly pension payments for a surviving spouse. Defendant was eligible to sign up for the SBP in the 1983 time period.[5] On or about June, 1983/1984 defendant informed plaintiff that he had to select benefit levels that would be paid to plaintiff if defendant predeceased her, and that her signature was required on the election form.[6]

Defendant explained that there were two levels of SBP payments to a surviving spouse. Defendant stated that he would have a modest retirement income from both his military and civilian pensions. In light of that modest income, and because he had ample life insurance for plaintiff, defendant suggested that they elect the level which provided for a lower amount for the SBP, but would provide for a higher monthly pension payment while he was alive. Plaintiff agreed to defendant's suggested election.[7]

In 1986 defendant initiated divorce proceedings.[8] Prior to the initiation of divorce proceedings, defendant had not mentioned the prospect of divorce at any time during their twenty-five year marriage.[9]

A 1989 phone conversation led plaintiff to discover that defendant had structured

---

[4] D.I. 2, ¶ 3. Retirement pay began when defendant turned sixty years old. *Id.*
[5] D.I. 2, ¶ 4.
[6] D.I. 2, ¶ 5.
[7] D.I. 2, ¶ 6.
[8] D.I. 2, ¶ 8.
[9] D.I. 2, ¶ 9.

a 1979 transaction to purchase their house in a manner where joint proceeds of the couple's prior home were used for the purchase and resulted in defendant being the sole owner of the newly-purchased house.[10] At the time of this discovery, plaintiff did not think about her prior SBP election.[11] In a 2005 conversation between plaintiff and her brother, she was informed that, in 1979, defendant had asked plaintiff's brother about a possible plan for divorce.[12]

From October 2005 to October 2006, Congress authorized an Open Enrollment Period for the SBP during which defendant could change his original SBP election. Plaintiff met with defendant and asked him to make a change to his SBP election during the Open Enrollment Period. At that time, plaintiff informed defendant that she had learned defendant had been planning on divorce when he encouraged her to agree to the lower SBP level in 1983. Defendant did not deny that he had mentioned his divorce intentions to her brother in 1979. Plaintiff suggested to defendant that if he did not change his SBP election, he could obtain a $50,000 life insurance policy on himself naming her as beneficiary. Defendant refused both requests made by plaintiff.[13]

In the couple's divorce, the court awarded plaintiff 48% of defendant's Navy pension, but not the SBP. Defendant may only elect one recipient of the SBP. In 1995, defendant elected the SBP go to plaintiff, not his second wife.[14]

In 2005, after the conversation in which she learned of defendant's 1979 statement concerning divorce, plaintiff discussed her situation with a Judge Advocate

---

[10] D.I. 2, ¶ 8.
[11] D.I. 2, ¶ 9.
[12] D.I. 2, ¶ 9.
[13] D.I. 2, ¶ 10.
[14] D.I. 2, ¶ 11.

General attorney at McGuire Air Force Base in New Jersey. That attorney told plaintiff that when she filed her complaint in this case, he hoped she would forward a copy to the Secretary of Defense. From that comment, plaintiff surmised that the Department of Defense was seeing large numbers of divorced military spouses finding themselves in situations similar to plaintiff with regard to reduced level SBPs.[15]

**Positions of the Parties**

Defendant maintains that this court does not have subject matter jurisdiction over plaintiff's complaint for two reasons. First, defendant asserts that plaintiff's complaint alleges a state law fraudulent inducement claim. Therefore, the court's jurisdiction cannot be based on 28 U.S.C. § 1331, federal question jurisdiction. Second, defendant maintains that the court does not have subject matter jurisdiction over plaintiff's state law claim under 28 U.S.C. § 1332 because there is no diversity of citizenship between the parties.

Plaintiff's complaint avers that this court has subject matter jurisdiction over this matter because defendant was a federal (military) employee who fraudulently induced her to sign a federal document, the SBP.[16] In her brief in opposition to defendant's motion, plaintiff specifies that this action arises under Article III, Section 2, of the U.S. Constitution, and under 28 U.S.C. § 1331.

**Discussion**

Defendant argues, that on its face, plaintiff's complaint fails to demonstrate that this court has subject matter jurisdiction. In this situation, a "court in assessing a Rule

---

[15] D.I. 2, ¶ 12.
[16] D.I. 2 (unnumbered paragraph titled "COMPLAINT").

12(b)(1) motion based on the pleadings must assume that the allegations contained in the complaint are true."[17] The court is also mindful that where, as here, the plaintiff is a *pro se* litigant, the court must construe the complaint liberally.[18]

Pursuant to 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--(1) citizens of different States . . . ."

Here, the complaint seeks a sum in excess of the $75,000 statutory minimum.[19] On its face, however, the complaint states that the parties are citizens of the same state, i.e., Delaware.[20] Consequently, the court does not have subject matter jurisdiction under 28 U.S.C. § 1332.[21]

In order for the court to have subject matter jurisdiction in this case, therefore, it must be found under 28 U.S.C. § 1331.[22] Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

---

[17] *Cardio-Medical Associates, Ltd. v. Crozer-Chester Medical Center*, 721 F.2d 68, 75 (3d Cir. 1983) (citing *Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

[18] *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n.6 (3d Cir.1997) *overruled on other grounds Abdul-Akbar v. McKelvie*, 239 F.3d 307 (3d Cir. 2001).

[19] D.I. 2, ¶ 14.

[20] D.I. 2, ¶¶ 1-2.

[21] Plaintiff's brief also acknowledges that the court does not have diversity jurisdiction over this matter. *See* D.I. 17 at 2 (Reply to Defendant's Motion to Dismiss the Complaint) ("Plaintiff agrees that this case does not involve diversity.").

[22] The court notes that in her brief, plaintiff also cites Article III, Section 2, Clause 1 of the United States Constitution. The language from that clause cited by plaintiff recites, "[t]he judicial Power shall extend to all cases, in law and equity, arising under this Constitution . . . to all Cases of admiralty and maritime Jurisdiction; to Controversies to which the United States shall be a Party." D.I. 17 at 1. That defendant was a member of the Navy Reserves does not, in and of itself, raise an issue of admiralty or maritime law and no facts have been alleged that would otherwise raise such legal issues. Also, the United States is not a party to the case. Therefore, Article III, Section 2 of the United States Constitution does not provide subject matter jurisdiction in this matter.

> An action arises under the laws of the United States if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition.[23]

Plaintiff's complaint alleges that defendant fraudulently induced her to elect a lower level of survivor benefits under the guise of the couple enjoying higher pension payments during his lifetime although, at the time of the election, defendant was contemplating divorcing plaintiff. As a result of that election, and the couple's subsequent divorce, plaintiff alleges she has been damaged in the amount of at least $126,000.[24]

Even construed liberally, plaintiff's complaint does not seek a remedy expressly granted by federal law and none of the allegations contained therein requires construction of a federal statute.[25] It is true that defendant was a member of the Navy Reserves at the time of the alleged fraudulent inducement and that the form for electing SBP benefits is a federal form.[26] Defendant was not acting on behalf of the United States Navy at the time of the transaction at issue and there are no allegations concerning the SBP election form that require the court's analysis. The alleged harm is that plaintiff agreed to the election of a lower level of SBP benefits in exchange for sharing higher pension payments during defendant's lifetime. As a result of plaintiff's

---

[23] *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974).
[24] D.I. 2, ¶ 14.
[25] The allegation that in 2005 a military attorney suggested plaintiff forward a copy of the complaint to the Secretary of Defense does not establish any nexus to federal law with regard to the contents of that complaint and the remedy sought which creates subject matter jurisdiction.
[26] The SBP form states as its principal purpose: "[t]o permit eligible individual to make Survivor Benefit Plan, Reserve Component Survivor Benefit Plan elections during the open enrollment period." D.I. 2, Ex. 2.

divorce, she did not receive that expected benefit. That harm simply does not implicate a remedy arising under federal law.[27] Consequently, this court does not have subject matter jurisdiction over plaintiff's complaint.

## Conclusion

For the reasons stated herein, defendant's motion to dismiss (D.I. 9) is **GRANTED**.

August 29, 2007
Wilmington, Delaware

Thynge, U.S. Magistrate Judge

---

[27] See, e.g., Samaroo v. Samaroo, 743 F. Supp. 309, 313 (D.N.J. 1990) (The court determined that a federal question (ERISA) was raised where plaintiff included a pension plan administrator as a defendant. The court noted that if the plaintiff's only request for relief was an amendment of her divorce decree, "the Court would have little trouble concluding that the state action did not 'arise under' federal law. Amendment of the Final Judgment of Divorce to reflect [plaintiff's] right to survivor's benefits is not a remedy expressly granted by federal law, nor would it require the interpretation of a federal statute or application of a distinctive federal policy.").